**UNARCO INDUSTRIES, INC., Plaintiff,**

v.

**EVANS PRODUCTS CO., Defendant.**

**No. 65 C 1410.**

United States District Court

N. D. Illinois, E. D.

Dec. 8, 1966.

Judgment affirmed, 7 Cir., 385 F.2d 834.

Norman Lettvin and James F. Davis, Bair, Freeman & Molinare, Chicago, Ill., for plaintiff.

Granger Cook, Jr., Hume, Clement, Hume & Lee, Chicago, Ill., and John A. Blair and Robert L. Boynton, Harness, Dickey & Pierce, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

DECKER, District Judge.

This is a suit for infringement of United States Patent No. 3,168,055, entitled "Movable Bulkhead for Railroad Cars." The patent application was filed on May 11, 1964, a "Petition to Make Special" was filed on October 1, 1964, and granted on October 9, 1964, and the patent issued on February 2, 1965. The applicants, Edward Vander Hyde, Gerald McLaughlin and Adolph Kuellmar have assigned all right, title and interest in the patent to plaintiff.

Plaintiff, Unarco Industries, Inc. ("Unarco"), is an Illinois corporation, having its principal office and place of business at Chicago, Illinois. Defendant, Evans Products Co. ("Evans"), is a Delaware corporation, having an office and a regular and established place of business at Chicago, Illinois. The complaint charging infringement was filed on August 23, 1965; on May 13, 1966, Evans was granted leave to file a counterclaim seeking a declaratory judgment of invalidity and of non-infringement by a product manufactured and sold by Evans after the complaint was filed.

This court has jurisdiction of this case under 35 U.S.C. §§ 271 and 281, and 28 U.S.C. §§ 1338(a) and 2201. Venue under 28 U.S.C. § 1400(b) was waived by defendant by the filing of the counterclaim. This case was tried before the court on June 1–8, 1966. This memorandum opinion, and the findings of fact and conclusions of law contained within it, pursuant to F.R.Civ.P. 52(a), are based on the evidence introduced at trial and the extensive briefs filed by the parties. I have concluded that Evans is entitled to judgment on the ground that the patent in suit is invalid.

A bulkhead is a wall-like apparatus mounted in a railroad freight car to separate the car into sections and hold freight in position. The usual bulkhead extends from floor-to-ceiling and from side-to-side of the car and is movable along overhead tracks through the length of the car to any position. The tracks have closely spaced holes and the top beam of the bulkhead has wheels with sprockets to engage the holes. In some models the sprockets work independently; in others they are attached to a common rotating axle extending the length of the bulkhead.

As a general rule, two bulkheads are used in each car, one at each end. In

normal use the two ends of the car are loaded through centrally located side doors and bulkheads are then moved against the end loads and locked in position. They are equipped with locking pins at each corner which engage holes in the floor and ceiling of the car to hold the bulkhead in place. A handle or handles operate the four pins simultaneously through a system of bars and links. Typical is the old Evans DF–B model which has a single handle at the center of the bulkhead. A workman pulls the handle away from the bulkhead thereby turning a shaft which operates linkages in the side posts of the bulkhead. The linkages insert or retract the locking pins.

Bulkheads of this type have been used for years in ordinary railroad freight cars. Unarco and Evans have manufactured many of them.

In 1963 and 1964, an extra large freight car—the "high cube" car—was developed to meet the demands of certain automobile manufacturers. The high cube car is simply longer and higher than the conventional car. The larger car requires a larger bulkhead, and in 1963 Unarco and Evans entered the competition for the high cube bulkhead business.

One sample high cube car equipped with two bulkheads was produced in early 1963 by Whitehead & Kales. Neither party to this suit had anything to do with this construction. In the fall of 1963, 100 high cube cars were ordered for use by Chevrolet; Evans supplied bulkheads for these cars which, but for their height, were of the same design as the prior Evans bulkheads for ordinary freight cars. This was the Evans "one handle high cube bulkhead." [1]

At about the time Evans was preparing to supply the one handle bulkhead for Chevrolet, Ford Motor Co. ("Ford") became interested in high cube cars; a group of railroads decided to purchase

about 400 cars to be placed in a pool for Ford's use. In order to standardize design criteria for such cars, a meeting was held on October 7, 1963, attended by representatives of railroads, freight car builders, and Unarco and Evans. Certain requirements were promulgated, which were revised on October 30, 1963.

Evans and Unarco were aware of additional requirements stated by Ford. These included the requirement that the bulkhead was to be operable from the doorway of the freight car so that two bulkheads could, if necessary, be pushed flush against one another; the one handle bulkhead could not be so used. This requirement was made known to Evans in September, 1963, and to Unarco on November 18, 1963. In December, 1963, Ford informed Evans that the high cube bulkhead should not "lag" when being moved on its tracks; bulkheads in ordinary cars do not present this problem.

The new Evans design for the Ford cars used three handles. It differed from the Chevrolet "one handle" design only in that in addition to a handle at the center of the bulkhead, it included a handle at each of the side posts. All handles moved perpendicular to the plane of the bulkhead. In order that each of these handles might be operated independently without accompanying movement of the other handles, a clutch was provided. Operation of any handle released all four corner locking pins. No response to the "lag" problem was included.

The Unarco response to Ford's requirements was the device which is the subject matter of the patent in suit. It has two lever type handles pivotally mounted in the side posts at the edges of the bulkhead, swinging in the plane of the bulkhead. These locking pin operating handles are connected by a linkage with the result that movement of one handle produces opposite simultaneous movement of the other handle. Operation

---

1. Prior bulkheads for ordinary cars were designed with pivot to permit swinging them out of the way against a side wall of the car. This feature was not needed in high cube cars and thus was not included in the Chevrolet bulkheads. The presence or absence of this feature is irrelevant to the issues in this case.

of either handle releases all four corner locking pins. The "lag" problem was solved with a "chain fall."

Both Evans and Unarco received their first orders for high cube bulkheads in February, 1964. On June 10, 1964, a demonstration and inspection of high cube cars and bulkheads was held at which the Evans model was rejected by the trade. Outstanding Evans orders were cancelled. The Unarco model was accepted.

The nine claims of the patent in suit respond to one or both of the specific Ford requests mentioned above: (a) handles must be operable from outside of the car; (b) bulkhead must move without "lag" at the top.

One of the alleged novel features of the patent resides in the arrangement and location of the handles.[2] The other is the "chain fall," a chain looped over a wheel attached to the axle which runs through the top beam of the bulkhead. When the chain is pulled, the wheel and axle turn and the bulkhead moves without "lag."[3]

2. Claims 1–5 and 8 are "handle claims." Only the arrangement of handles in conjunction with the rest of the bulkhead is claimed by Unarco to be new and nonobvious. Claims 1 and 8 are fair representatives of all "handle claims." They read as follows:

"1. In a railroad freight car having side walls, a roof and a floor, a movable bulkhead structure comprising tracks adapted to be mounted in a car adjacent to its roof, a bulkhead suspended from the tracks for movement lengthwise of the car, latch strips in the car adjacent to the floor and roof thereof, latch parts movably carried by the bulkhead for engagement with the latch strips to latch the bulkhead in a selected position in the car, and operating means for the latch parts including a lever pivotally mounted at each edge of the bulkhead for swinging in the plane of the bulkhead toward and away from toward the center of the bulkhead and link means connecting the levers to cause them to turn simultaneously in opposite directions."

"8. In combination with a railroad freight car having side walls, a floor and a roof, elongated tracks in the car adjacent to the juncture of the side walls and roof, each of the tracks having a horizontal flange formed with a series of spaced latching openings and a series of spaced sprocket openings, a pair of latching strips in the floor of the car each formed with a series of latching openings, a bulkhead including spaced vertical side posts, a supporting structure for the bulkhead including a roller at each end rolling on the track and a sprocket connected to each roller engaging the sprocket openings, latch pins movably mounted in each of the side posts for movement into and out of latching engagement with the latching openings in the tracks and latching strips, linkage in each of the side posts to move the latch pins therein, a cross link extending between the side posts interconnecting the linkages therein for simultaneous movement, and manual operating means in the side posts connected to the linkages."

3. Claims 6 and 9 are "chain fall" claims. Only the device for moving the bulkhead is said by Unarco to be new and nonobvious in them. Claims 6 and 9 read as follows:

"6. In combination with a railroad freight car having side walls, a floor and a roof, elongated tracks secured to the side walls of the car adjacent to the roof, each of the tracks having a horizontal flange formed with a series of spaced latching openings and a series of sprocket openings, an elongated beam extending across the car from one track to the other, rollers on each end of the beam supporting the beam on the tracks for movement lengthwise of the car, a sprocket shaft rotatably mounted on the beam, a sprocket secured to each end of the shaft and meshing respectively with the sprocket openings in the tracks, a telescopically slidable but non-rotatable connection in the shaft whereby the sprockets can move toward and away from each other, a wheel secured to the shaft to drive it, a looped tension member looped over the wheel and depending therefrom for operation by an operator in the car to turn the shaft and thereby to move the beam along the tracks, a bulkhead supported from the beam, latch pins movably carried by the bulkhead for engagement in the latching openings in the tracks, and operating means on the bulkhead to move the latch pins."

"9. In combination with a railroad freight car having side walls, a floor and a roof, elongated tracks in the car

The bulkheads made by Evans since June, 1964, are charged with patent infringement in this case. Three Evans models are involved:

1. The "cross link" design;
2. The "dog bone" design;
3. The "present" design.

These models are essentially similar, but for the arrangement of the locking pin operating handles. The "cross link" design, of which apparently one set only was shipped by Evans after the patent in suit issued but before notice of it was received, is practically identical to the Unarco model and patent.

The "dog bone" design, made and sold prior to filing of this suit but after issuance of the patent in suit, used two straight rods for handles, one at each edge, moving in the plane of the bulkhead. Each turned a "torque shaft" which ran the length of the bulkhead to which the pin linkages were connected. When a handle was pushed, the shaft turned, operating linkages and releasing all four corner locking pins simultaneously. The "dog bone" name refers to the fact that each handle rod slid in its housing so that it could be pushed from either inside or outside the box car.

The "present" design uses a torque shaft which is turned from either edge of the bulkhead by a handle in each side post, or from either face of the bulkhead inside the car by a third handle at the inside of one side post. These three handles move in a plane perpendicular to the plane of the bulkhead. The "present" design was not made and sold until after the complaint was filed and thus was not accused by Unarco. Evans has filed a counterclaim for a declaratory judgment of non-infringement as to this model. Each of these Evans bulkheads uses a chain fall materially identical to the Unarco chain fall. Evans had never used a chain fall on a bulkhead before June, 1964, and production of the cross link model.

The questions in this case are whether the patent is valid and, if valid, whether it has been infringed by Evans.

### I.

The test of non-obviousness under 35 U.S.C. § 103 [4] is to be strictly applied. Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The person skilled in the art is presumed to have had at his disposal at the time of the invention all relevant prior constructions and patents, as well as all patents which were filed prior to filing of the patent in suit even if issued after the patent in suit. Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed. 2d 304 (1965). Complete anticipation in prior art need not be shown, nor by

---

adjacent to the juncture of the side walls and roof, each of the tracks having a horizontal flange formed with a series of spaced latching openings and a series of spaced sprocket openings, a pair of latching strips in the floor of the car each formed with a series of latching openings, a bulkhead in the car, a supporting structure for the bulkhead extending between and movably supported on the tracks, coaxial supporting wheels and sprocket wheels at the ends of the supporting structure, the supporting wheels riding on the tracks to carry the supporting structure and the sprocket wheels meshing with the sprocket openings, a shaft connecting the sprocket wheels for simultaneous turning, latch pins movably carried by the bulkhead and movable into and out of engagement with the latching openings in the tracks and the latching strips, operating means for the latch pins carried by the bulkhead, and second operating means connected to the shaft to turn it thereby to move the supporting structure and bulkhead in the car."

Claim 7, the remaining claim in the patent in suit, is a combination "handle" and "chain fall" claim.

4. "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103.

the very terms of § 103 need a single prior art patent be cited which contains all of the elements of the patented device. Graham, supra, 383 U.S. at 24, 86 S.Ct. at 697.

The patent is presumed valid. 35 U.S.C. § 282. The presumption is strengthened where the validity of the patent is challenged on the basis of prior art cited by the Patent Office. Shumaker v. Gem Mfg. Co., 311 F.2d 273, 275 (7th Cir. 1962). "There is no presumption of validity as against prior art not before the patent office." Skirow v. Roberts Colonial House, Inc., 361 F.2d 388, 390 (7th Cir. 1966). This is true even when an uncited prior art patent was overlooked because it had not yet issued. See *Hazeltine,* supra. However, where the Patent Office cites some prior art, but not other similar prior art, the presumption is weakened only to the extent that the teaching of the uncited art is not disclosed in the cited art.

The parties agree that certain constructions and patents constitute prior art in this case. These include the old Evans QL bulkhead (sold in the 1950's) and the Evans DF–B bulkhead (sold in 1960) for use in ordinary freight cars. The DF–B is the construction shown in U. S. Patent No. 3,209,707 issued to P. N. Erickson, which is owned by Evans. Although issued after the patent in suit, Erickson was filed earlier. There is some question whether the Evans "one handle" high cube bulkhead constitutes prior art; however, but for its size, it is similar to the smaller DF–B, and shows no different handle arrangement or movement device. Thus, the availability as prior art of the "one handle" high cube model is immaterial. The parties further agree that U. S. Patent No. 3,- 191,546, issued to F. P. Adler, is prior art. It, too, was filed before the patent in suit, but issued after it. There is, of course, no dispute as to all patents issued before the patent in suit was filed.

There is a dispute as to whether the first Evans three handle model is prior art. I need not resolve that question since I am of the opinion that even without that construction, the patent in suit is invalid under § 103.[5]

Plaintiff claims three novel features of the patent: (a) a pair of lever-type handles in the side posts of the bulkhead; (b) such handles being arranged for swinging in the plane of the bulkhead and being linked to cause said lever-type handles to move simultaneously for simultaneous operation of the bulkhead's latch pins; and (c) providing a means, such as a chain fall, for moving the shaft of the bulkhead's carriage to thereby move the supporting carriage and the bulkhead through the freight car.

Thus, in Claims 1 and 2, the language in question is only the following: "a lever pivotally mounted at each edge of the bulkhead for swinging in the plane of the bulkhead toward and away from toward the center of the bulkhead and link means connecting the levers to cause them to turn simultaneously in opposite directions." There is similar language in Claims 3–5. In Claim 6, the only language in question is that describing the chain fall. In Claim 9, the only language in question is a broad reference, claimed by plaintiff to refer to the chain fall, which reads as follows: "and second operating means connected to the shaft to turn it thereby to move the supporting structure and bulkhead in the car." The only language at issue in Claim 7 is that already covered in Claims 1 and 2. Finally, Claim 8, another handle claim, raises an additional question only in connection with the following language: " * * * manual operating means in the side posts connected to the linkages."

The following elements are at issue here:

1. the location of the handles;
2. the direction of their swing;

---

5. The evidence clearly shows substantial contemporaneous activity by both Unarco and Evans. The question of which party was first to conceive and reduce the bulkhead to practice is clouded by conflicts and gaps in the evidence.

3. the cross link;
4. the chain pull.

■ *A. Handle Location.* Adler, admitted by plaintiff to be prior art against the patent in suit, shows a freight car bulkhead with two handles, one at each side edge of the bulkhead,[6] each of which operates all locking pins. These handles project beyond the edges of the bulkhead. Adler not only makes the handle location feature of Claims 1–5 of the patent in suit obvious under 35 U.S.C. § 103, but indeed directly anticipates, under 35 U.S.C. § 102(e), those parts of Claims 1–5 and 7 which claim levers mounted at the edges of the bulkhead. The only question remaining is whether Adler similarly precludes a valid patent for that part of Claim 8 which reads: "a manual operating means in the side posts * * *."

In its post-trial brief, Unarco distinguishes Adler as follows: "From a practical standpoint, locating the handles *in* the side posts and thus *within* the projected confines of the bulkhead is superior to the handle construction disclosed by Adler because the former permits having a bulkhead of maximum width in the box car while shielding the handles from damage when not in use, while the latter necessarily exposes the handles to being struck and damaged and requires a reduction in the usable width of the bulkhead." [7]

Evans never assaults this distinction, nor has it introduced evidence to show that Adler and Claim 8 are not actually different, or that Adler makes Claim 8 obvious to one skilled in the art. Nonetheless, I do not think that it is a very difficult step from Adler to Claim 8. A person skilled in the art and aware of Adler would need little time or skill to simply recess the Adler handles in the edges—or side posts—of the bulkhead.

The presumption of validity is weakened with respect to this element of the patent. Adler was not cited by the Patent Office, nor was equally good prior art cited.

Unarco's inventors are not entitled to a patent for this element in any case. Ford clearly requested a bulkhead operable from outside the car, a requirement which compelled placing handles at the edges of the bulkhead.[8]

Since the alleged novelty is merely in the location of the handles, and since that location was, in effect, specified by Ford, it is difficult to see what Unarco's inventors contributed to this element of

---

6. Adler Patent No. 3,191,546, Column 4, Lines 27–33:
   "3. A movable bulkhead as claimed in claim 1 in which said nut rotating means comprises a horizontally extending shaft having a noncircular end portion projecting beyond the end surface of said door, a reversible ratchet wrench engaging said end portion, and retainer means engaging the handle end of said ratchet wrench for maintaining it in a vertical position during periods of non-use."

7. Plaintiff's post-trial brief, p. 30.

8. Evans employees wrote the following report following their meeting with Ford on September 12, 1963:
   "Ford personnel suggested following changes:
   (1) Add two blkhds. operating levers one each side of blkhd. to permit back to back use which will allow blkhds. to be operated from door openings.

Our [Evans'] Eng.Dept. confident this can be accomplished * * *."
On November 18, 1963, Unarco employees, two of the inventors of the patent in suit, received similar information. Gerald McLaughlin, one of Unarco's inventors, testified as follows:
Q. Did you learn what the specifications were at Ford at that time? [November, 1963.]
A. We did in a broad sense, yes.
Q. Will you tell us what you learned at that time?
A. They indicated * * * that the bulkheads would have to be operable from outside of the car because in many cases after the car was loaded the bulkheads would be in such a position that a man could not get in between them to operate them.
Q. Did Ford tell you how the bulkheads were to be operated from outside the car?
A. No, they did not. (Transcript, pp. 66–67.)

338

the patent. See Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945), discussed in United States v. Adams, 383 U.S. 39, 49–50, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). If this location of handles is, indeed, in itself patentable, it appears that Ford personnel are entitled to the patent for it. See 35 U.S.C. § 102(f).

■ *B. Direction of Handle Swing.* Unarco claims a non-obvious, novel idea in having the locking pin operating handles move *within* the plane of the bulkhead rather than in a plane perpendicular to the plane of the bulkhead. The Evans DF–B (Erickson) and three handle bulkhead, and the bulkhead shown in Adler, have handles which move in a plane perpendicular to the plane of the bulkhead.

The original high cube bulkhead made by Whitehead & Kales, of which only one car set was ever produced, had handles moving in the plane of the bulkhead. Like the handles in the patent in suit and in the Evans DF–B (Erickson) bulkhead and Adler, they operate latch pins. The major distinction is that apparently the Whitehead & Kales handles each operate one latch pin, rather than all four. Nonetheless, this construction shows the handle swinging element claimed to be novel and non-obvious in the patent in suit.

Evans offers prior art patents showing the same arrangement. In U. S. Patent No. 2,220,436, issued to W. B. Ziegler on November 5, 1940, which "relates to an adjustable bulkhead or partition arrangement for railroad cars, trucks, ship compartment and the like," a lever-type handle swinging in the plane of the bulkhead operates locking pins.[9] It is a single handle, located within the confines of the bulkhead, apparently accessible only from within a freight car. If the rather simple idea of swinging handles in the plane of the bulkhead needs

prior art for its inspiration, Ziegler clearly shows it.

Similarly, handles swinging in the plane of a bulkhead releasing locking pins are shown in U. S. Patent No. 2,543,143, issued to C. H. Wells on February 27, 1951. With respect to other features of the patent in suit, Wells is clearly inapplicable. However, it is available to a person skilled in the art to show that handles operating locking pins can swing in the plane of the bulkhead. Again, it is important to note that Unarco claims novelty only in the fact that the handles swing in the plane of the bulkhead, and not in any particular way of accomplishing this result. Wells shows this feature clearly. Wells is relevant prior art, even though titled "Truck Partition." Not only is it analogous to freight car bulkheads, but also the Wells specifications begin by stating: "The present invention relates to the transportation art and more particularly to trucks, railroad cars and the like, which are adapted for transporting merchandise therein and particularly livestock."

Ziegler was not cited to or by the patent office; Wells was. The presumption of validity is not weakened by the failure to cite Ziegler since Wells, which illustrates a similar principle, was cited.

I agree with the following observation in Evans' brief: "This is not a case in which it is any more difficult to swing the operating handles in the plane of the bulkhead than in a plane at right angles thereto. Plaintiff points to no obstacle or problem that had to be solved."[10] The direction of handle movement is clearly a matter of choice. On this simple element of the patented bulkhead, Evans has established a prima facie case of obviousness under § 103. Nothing in the record seriously weakens the conclusion that this element fails the § 103 test.

9. Ziegler Patent No. 2,220,436, Column 1, Lines 34–38, page 3: "and means including a pair of angle levers positioned within adjacent corners of said partition

structure, for simultaneously projecting and retracting said projectable and retractable means."

10. Evans' post-trial brief, p. 30.

Finally, the record does not show that the change in direction of handle swing makes a difference. Unarco argues that old handles had to swing perpendicular to the bulkhead to provide a place to grip the bulkhead when pushing it through the car. That function is unneeded in newer bulkheads and thus the handles may be arranged as Unarco has arranged them without damage to usefulness. Consequently, Unarco has designed a handle which performs one less function than old handles, but no new ones. It has dispensed with a feature, but to no apparent advantage. The difference between Unarco's handles and old handles is trivial, making no difference whatsoever.[11] Thus, it is clear that the Unarco handle arrangement is not only not non-obvious, it is not new and useful. Standing alone, it cannot survive the test of 35 U.S.C. § 101.

■ *C. The Cross Link.* Claim 1 specifies a "link means connecting the levers to cause them to turn simultaneously in opposite directions." Claim 7 contains similar language. Claim 8 refers to "a cross link extending between the side posts interconnecting the linkages therein for simultaneous movement * * *."

The "cross link" is simply one or two bars extending the length of the bulkhead, pinioned and connected in such a way that operating one handle moves the link bars which in turn move the opposite handle. While this appears to be a common device, used for numerous purposes, no prior art has been introduced showing *this* cross link device in conjunction with a bulkhead. It is clearly shown for a hand brake for small rail cars used in mines in U. S. Patent No. 2,107,761, issued to L. G. Miller on February 8, 1938. It is also shown, in somewhat different form, in a patent for a box car door, U. S. Patent No. 964,899, issued to F. V. Carman on July 19, 1910. A related link construction is shown in

Ziegler, as well as in a patent for a bulkhead gate issued to G. F. Jones on June 6, 1939, U. S. Patent No. 2,160,870. I conclude that the use of a simple linkage to make opposite levers work together is generally available to a skilled mechanic or designer; it is readily accessible to a person skilled in the art. Use of it in the circumstances in which the alleged invention here occurred would have been obvious to a person skilled in the art.

Quite apart from the obviousness of the linkage device, it is clear that Unarco cannot recover in this suit on the basis of infringement of this part of the claim. As pointed out below, if the claims for this element are read broadly enough to permit a successful charge of infringement, then the claim is clearly anticipated in the prior art.

■ *D. Chain Fall.* The patent shows a bulkhead suspended from a beam through which extends a shaft equipped at each end with a sprocketed wheel. As the bulkhead rolls, the sprockets engage holes on the overhead track. There is "a wheel secured to the shaft to drive it" and "a looped tension member [a chain] looped over the wheel and depending therefrom for operation by an operator in the car to turn the shaft and thereby to move the beam along the tracks."[12]

It is beyond question that the chain fall is not patentable. The prior art clearly shows several similar constructions. In U. S. Patent No. 586,858, issued to G. Mesta on July 20, 1897, precisely this construction is shown. The only question is whether Mesta is properly relevant prior art. It deals with an "Apparatus for Pickling or Washing Metal," not a freight car bulkhead. However, Mesta is part of the art dealing with overhead traveling beam cranes; it is clear that some bulkheads are also a part of this broad field. Mesta refers to its "elevated rails of a traveling

11. The "present" Evans model returns to handles swinging perpendicular to the plane of the bulkhead with no damage to utility.

12. Patent in suit, Claim 6.

crane;" similarly, Erickson refers to its "crane rails" upon which the bulkhead rolls. Unarco is aware of the relevance of the traveling crane art; a "crane bridge" patent was cited to the Patent Office when the patent in suit was applied for, a patent issued to W. S. Chapin on August 29, 1961, U. S. Patent No. 2,997,966. Chapin deals exclusively with "overhead traveling cranes" and has nothing in it about freight car bulkheads. Unarco has merely suspended a bulkhead from a traveling beam. I think Mesta is relevant prior art and that it plainly negates the validity of the patent in suit.

Mesta is not needed to prove this point, however. The evidence shows that the chain fall principle has been used on traveling beam cranes commercially and that it is therefore prior art against the patent in suit. Given this prior use, employing a chain fall for the traveling crane beam from which the patent's bulkhead is suspended was obvious.

The chain fall is clearly shown in Chapin, a patent cited by the Patent Office. In view of the clear showing of the chain fall principle in the prior art, the presumption of validity, even if strengthened by the Patent Office's citation of Chapin, clearly has been overcome. However, I think it is clear that the Patent Office did not in fact issue a patent for the *chain fall* despite Chapin's showing of it; the record shows that the examiner thought the *chain fall* was obvious. The file wrapper history of the patent is critical to this point.

The Patent Office had before it not only Chapin, but also U. S. Patent No. 3,017,842, issued to S. M. Nampa on January 23, 1962, a bulkhead patent relevant primarily for the means by which it rolled on its overhead tracks. In response to those claims in the application which specified the means of moving the bulkhead, the Patent Examiner said:

"Claims 9, 10 and 11 are rejected as unpatentable over Nampa in view of Chapin et al under 35 U.S.C. 103. Nampa, Figure 4, shows the basic track, sprocket and suspended bulkhead structure of the claims. Chapin et al disclose a crane bridge including a transverse shaft with gears at the ends for driving the crane structure and describes the use of a depending chain on the wheel 80 to drive the crane. It would have been obvious for a person skilled in the art at the time the invention was made to have provided drive means such as the wheel 80 and a depending chain associated with the cross shaft structure 21 of Nampa to move the bulkhead along the track."

However, the application for a patent on this device was granted after the applicants made the following distinctions to the Patent Office:

"The Nampa patent shows a movable bulkhead which is of an entirely different type in that it is provided with a foldable lower section which folds over the major upper portion of the bulkhead with the entire bulkhead then being folded against the ceiling of the car and latched into position. The bulkhead is supported for movement in the car by providing sprocket rollers at its opposite sides near its top which ride on tracks near the car ceiling. As clearly explained in Column 2, lines 54 to 69, each of the sprocket wheels is rotatably and coaxially supported in the ends of a cylindrical tube 21, as seen in Figure 4, with shafts on the sprocket wheels rotatable in the tube. It is apparent that with this construction the sprocket wheels are independently rotatable so that they would not and could not prevent twisting or cocking of the bulkhead as it is moved except for the stabilizing influence provided by the member 73, as shown in Figure 1. Furthermore, it would obviously be impossible to move the bulkhead of Nampa by rotating the tube 21, since the shafts on which the sprockets are supported are rotatable in the tube. It would, therefore, be necessary in the Nampa construction to drive the sprockets separately through some means to affect movement of the bulkhead and this

is an obviously impractical construction.

"The Chapin et al patent shows a crane bridge having elongated members each of which carries two widely separated sets of rollers which rest on the lower flange of an "I" beam. Not only is this type of construction expensive but it would be unsuitable for use in freight cars since the elongated side frames would make it impossible for a bulkhead carried on the crane bridge to be moved to a position closely adjacent to the end of the car. Two of the sets of supporting rollers for the bridge are driven by a shaft 25 which is formed on its ends with pinions 60 meshing with gears 58 and 59, carried by the rollers to drive them when the shaft is turned. As is disclosed in the patent, the shaft may be turned manually through a chain fall or by an electric motor, as illustrated at 81 in Figure 4. In this construction, however, the driven elements are smooth rollers which simply rest on the flanges of the "I" beam tracks and which would be capable of sliding thereon. Simultaneous driving of these rollers is not relied upon in the Chapin et al patent to prevent the crane bridge from cocking, this being prevented by the wide spacing of the sets of rollers on each of the end frame members longitudinally of the track."[13]

It is apparent that the patent was granted despite Nampa and Chapin because of the use of the chain fall *in conjunction* with the special arrangement of shafts and sprockets; the chain fall without the common shaft and anti-cocking devices was regarded by the examiner as obvious. It is further clear that had the examiner found in Nampa a device such as the shaft and anti-cocking device in the patent in suit, the patent on the chain fall claims would not have been granted.

Applicants' representation that the construction in Nampa "would not and could not prevent twisting or cocking of the bulkhead as it is moved," except for the stabilizing influence of an unrelated element, was not correct. The Nampa specifications clearly described a feature which "prevents binding of the bulkhead during longitudinal movement."[14] Since it is evident that the examiner was concerned with the anti-binding features of the patent, this misunderstanding might have been critical in the granting of the patent. Under these circumstances, the presumption of validity is weakened.

Furthermore, the presumption is further undermined because the examiner did not have before him art more pertinent on this point than Nampa. Although Nampa has *an* anti-binding device, it does not have *the* device shown in the patent in suit. However, precisely the same device as that shown in the patent in suit to permit rolling without cocking was used before 1960 in the Evans QL bulkhead. It was used in the Evans DF–B (Erickson) and in the Evans high cube "one handle" model. This is additionally important in light of applicants' argument to the examiner that Nampa had no common axle to which the sprocket wheels were attached, thus precluding use of the Unarco chain fall. The QL and DF–B bulkheads had an axle practically identical to the Unarco axle.[15] None of this art—all directly in point—was before the examiner. Nampa, while similar, shows a different device and was, in any case, argued by the applicants to have no such device at all during prosecution of the patent. Since the Patent Office did not have the benefit of the most relevant prior art, the presumption of validity as to this element is weakened if not dissolved. The weakened presumption of validity has been overcome; the alleged invention would

---

13. Patent in suit file wrapper, pp. 34–35.

14. Nampa Patent No. 3,017,842, Col. 2, lines 50–53.

15. In rejecting the original claims, the examiner referred to "the cross shaft

structure" of Nampa clearly indicating that he thought it rigidly attached to the sprocket wheels. However, as applicants correctly pointed out to the examiner, Nampa's shaft is not rigidly attached to the sprockets. The QL and DF-B axles are so attached.

have been obvious under the standard of § 103.[16]

\* \* \*

Each of the four elements of the patent in suit claimed to be novel and non-obvious is, standing alone, not patentable. The remaining question is whether the subject matter as a whole, a patented combination of obvious elements, is nonetheless non-obvious and patentable. I think not.

Given the problem posed by Ford and the development of the high cube car, the entire device would have been obvious to a person skilled in the art who was aware of Adler, Erickson, the old Evans QL and DF–B models and the widely used traveling beam crane. Once a person skilled in the art was told that the locking pins had to be operable simultaneously from the door, placing linked handles at the edges was obvious. Their direction of movement, though unimportant, could easily have been found in common prior art, as well as common sense. The angling problem, once discovered, led easily and obviously to the chain fall, a device clearly shown in relevant prior art and, in fact, functionally independent of the other three elements. It is evident that the examiner himself concurs in this view.

The obviousness of the patent in suit is confirmed, though not proved, by the fact that people skilled in the bulkhead art required very little time and thought to conceive the patent in suit, once they were faced with the problem. Ford's requirements were explained to two of the inventors on November 18, 1963. On the return plane trip from Ford, one of the inventors (a salesman without technical training) made a sketch showing all features of the locking pin system. One of the inventors testified that on that plane trip, the handle elements of the patent in suit were "refined to a point where it would be workable." [17] Another sketch, "more understandable for a project engineer or a draftsman," [18] was made on the following working day. Similarly, the chain fall was conceived within days after the problem became apparent. This is not a case where there was a long felt, but unsolved need. This is not a case where expensive or lengthy experiments were required. This is not a case where obstacles have been unsuccessfully assaulted by others. This *is* a case in which a problem was presented and the alleged invention followed immediately on its heels. Unarco's employees, people skilled in the relevant art, had no difficulty.

Unarco attempts to prove non-obviousness of its patent by reciting the undisputed fact that following a comparative demonstration of the Evans and Unarco bulkheads in June, 1964, outstanding orders for Evans bulkheads were cancelled, while the Unarco model was a commercial success. However, one reason for rejection of the Evans model related to the complex latching system required to permit support of the bulkhead on the bottom locking pins. This had nothing to do with the allegedly non-obvious and novel elements of the patent in suit.

Unarco suggests that Evans' failure to include a chain fall in its early model shows that the chain fall was non-obvious. However, the evidence clearly shows that a feature such as this was thought unnecessary by both Evans and the customer, Ford. It may be true that Unarco was aware of the problem which the chain fall solves before Evans. However, discovery of the problem was merely a matter of a simple test and curing it was a simple matter of using a device well-known in the relevant prior art.

The patented device would have been obvious to a person skilled in the art.

16. Claim 9, the other "chain fall" claim, is less specific than Claim 6, supra n. 3. Not only is Claim 9 too broad to meet the test of 35 U.S.C. § 112, and therefore invalid but also it is clearly anticipated and obvious in light of the prior chain fall art and patents showing other operating means, such as U. S. Patent No. 892,447, issued on July 7, 1908, to E. Posson for a refrigerator car bulkhead (among other devices).

17. Transcript, p. 162.

18. Ibid.

Consequently, the patent is invalid under § 103. Defendant Evans is entitled to judgment in this case.

## II.

■ Each of the three Evans models is charged with infringement: (a) the "cross link" model; (b) the "dog bone" model; and (c) the "present" model. "Neither a literal application of claim phraseology nor similarity of result is sufficient to establish infringement. There must be a real identity of means, operation, and result." Skirow v. Roberts Colonial House, Inc., 361 F.2d 388, 391 (7th Cir. 1966).

*A. The "cross link" model.* This model clearly infringes all claims of the patent. Unarco has demonstrated conclusively that each claim of the patent in suit reads on this accused device; Evans offers no defense.

■ However, Unarco has offered *no* proof of infringement; Unarco has not even attempted to prove that the Evans cross link model was either made or sold after the patent in suit issued. Nor has Unarco attempted to prove that Evans is contemplating return to this model. Of course, Unarco has the burden of proof on the question in fringement. With this barren record, there is no basis for an award of damages or an injunction.

Evans counsel conceded that one car set of the "cross link" model was sold after the patent issued, but before notice of the patent was received. This single infringement is hardly worth the space required to report it, and Unarco has not shown any basis for damages or an injunction as a result of it.

Consequently, although infringement is shown, even were the patent valid, no relief could be given on the basis of the "cross link" model.

■ *B. The "dog bone" model.* The sole issue as to infringement by the "dog bone" model of Claims 1 and 6–7 (the only infringement claimed by Unarco) is whether the patent's "link means" (Claim 1), "linkage" (Claim 7), and "cross link" (Claim 8) is the same as the torque tube in the Evans "dog bone" model. Otherwise the Evans "dog bone" model clearly infringes the patent in suit.

The cross link of the patent is provided to cause simultaneous and opposite movement of one locking pin operating handle when the other handle is manipulated. It operates in the following simple way: when one handle is moved, it pulls or pushes the cross link which pulls or pushes the opposite handle. Evans accomplishes the same result with a torque tube, a shaft running the length of the bulkhead. When one handle is operated, it turns the torque tube which, in turn, operates the opposite handle. This is not the "link" or "linkage" specified by the patent in suit. The operating principles and equipment are different. Although the term "linkage" can have a broad meaning which might include the Evans torque tube,[19] it appears that the word has a more restricted meaning when used in a mechanical patent.[20] Furthermore, Edward Vander Hyde, one of Unarco's inventors, testified that even excepting the handles and chain fall, the first Evans three-handle bulkhead was still not essentially like the Unarco bulkhead because it used a torque shaft.[21]

19. Webster's New Collegiate Dictionary, 1951 ed., definition of "link" no. 6: "*Mach.* Any intermediate rod or piece for transmitting force or motion."
*But see* Webster's New International Dictionary, 3d ed., definitions of "link" and "linkage": Link: "e. an intermediate rod or piece for transmitting force or motion; *esp.* a short connecting rod with a hole or pin at each end." Linkage: "a system of links; * * *."

20. See, e. g., In re Marson, 17 CCPA 687, 36 F.2d 290, 291–292 (1929).

21. Q. Now, except for the handle arrangement and the lack of a chain fall, was this Evans bulkhead which you saw at the Thrall Car Company in April of 1964 essentially like the Unarco bulkheads?

A. [Edward Vander Hyde] I would say no.

Q. In what respects, other than the ones I mentioned, did they differ?

A. The levers that I saw when they operated it, it required the torque shaft

While it is quite clear to me that the "link means" of Claim 1 and the Claim 7 "linkage" do not reach the Evans torque shaft, I think it beyond argument that the Claim 8 "cross link," which specifies a type of linkage, does not cover a torque shaft. While there is an identity of result, there is no identity of means or operation as to any of the three claims. See *Skirow*, supra.

Unarco cannot succeed on this claim for infringement for a more telling reason. The Evans torque tube has been used in bulkheads for years. It appeared in the Evans DF–B model and in the Erickson patent. In the one handle models the torque tube transmitted the force of the single center handle to the locking pin operating mechanism in the side posts. The use of a torque tube in two or three handle bulkhead is nothing new.[22] Consequently, if the claims of the patent in suit are read broadly enough to permit a finding of infringement by the "dog bone" model, *then* these same claims are plainly invalid since they cover a device well known in the bulkhead art long before the device shown in the patent in suit was conceived. Unarco cannot have it both ways; either the "linkage" claims are broad enough to cover the "dog bone," in which case they are invalid, *or* the "linkage" claims are quite narrow, in which case the "dog bone" does not infringe. I think the "linkage" claim must be restricted to the familiar "push-pull" linkage device, and not extended to the rotating torque tube. Consequently, there is no infringement of the "linkage" claims. Let this be quite clear, however: if the "linkage" claims are to be more broadly read, then they are plainly in-

valid. Since there can be no infringement of an invalid patent, I could not find infringement of the "linkage" claims in any case.

■ *C. The "present" model.* The "present" Evans model uses a somewhat different handle style than the "dog bone," *and* the handles move at right angles to the plane of the bulkhead. Unarco claims infringement only of Claims 6, 8, 9. As with the "dog bone," I find infringement is clear, but for the use of a torque shaft in place of Claim 8's "cross link." The discussion above of infringement by the "dog bone" model is applicable here, with the same result. It should be noted, however, that only Claim 8 among the "linkage" claims is said to be infringed by the "present" model, and it is quite clear that Claim 8's "cross link" cannot be read to cover Evans' torque tube.

\* \* \*

The two chain fall claims (6 and 9) are clearly infringed by all three Evans models, if the patent is valid. The "cross link" model clearly infringes all claims of the patent, although Unarco has not proved sufficient facts to justify relief for it. The "dog bone" does not infringe handle claims 1, 7 and 8, nor does the "present" model infringe handle claim 8; no infringement of other handle claims is claimed.[23]

Were this patent valid, Unarco would be entitled to a judgment of infringement of Claims 6 and 9 as to the "dog bone" and "present" models, and appropriate relief.

■ In view of the findings of fact and conclusions of law set forth in this memorandum opinion pursuant to

---

to manipulate the levers.
Q. Now, by levers, you are referring to what, the handles?
A. The handles. (Tr. pp. 194–95)

22. Adler uses a torque tube in a two-handle bulkhead. Adler contains the following specification:
"The operating mechanism is duplicated for each side of the bulkhead, but preferably the shaft 56 extends transversely for the full width of the bulkhead and is common to both operating mechanisms. Thus both sides of the bulkhead

can be locked or unlocked simultaneously by actuation of only one of the operating handles or ratchet wrenches 59, provided that the ratchet of the other wrench is released or reversed." (Adler Patent No. 3,191,546, Col. 3, Lines 52–59.)

23. In view of this disposition of the questions of validity and infringement, I do not reach the other questions raised by Evans of invalid aggregation of claims, overclaiming, misjoinder of inventors, and unclean hands.

F.R.Civ.P. 52(a), an order of judgment for defendant, Evans Products Co., on the complaint has been entered today. A judgment on the counterclaim for a declaratory judgment of invalidity of U. S. Patent No. 3,168,055 and of non-infringement has been entered today for counterplaintiff, Evans Products Co., on the ground that the invalid patent cannot be infringed.